UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAIRFIELD SENTRY LTD. (IN
LIQUIDATION), ET AL.,

                    Plaintiffs,

-against-

HSBC SECURITIES SERVICES
(LUXEMBOURG) S.A.,

                    Defendant.

FAIRFIELD SENTRY LTD. (IN
LIQUIDATION), ET AL.,

                    Plaintiffs,

-against-

HSBC PRIVATE BANK (SUISSE)
S.A.,

                    Defendant.

No. 21-cv-10316 (LAP)
No. 21-cv-10334 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Defendants[1] in adversary proceedings before the United

States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court") moved the Court for leave to appeal

from an order of the Bankruptcy Court dated November 4, 2021

---

[1] Defendants-Appellants are HSBC Securities Services (Luxembourg)
S.A. ("HSSL") and HSBC Private Bank (Suisse) S.A. ("PBRS" and,
together with HSSL, "HSBC").

1

(the "November 4 Order"), (see JA-1663-64), granting Plaintiffs'[2] motion to compel (see JA-1326-47).[3]  For the reasons set forth below, Defendants-Appellants' motion for leave to appeal (dkt. no. 3 in 21-cv-10316; dkt. no. 3 in 21-cv-10334) is granted, and the Bankruptcy Court's November 4 Order is affirmed.

## I.   **Background**

This case concerns two investment "feeder funds" organized under the laws of the British Virgin Islands ("BVI").[4]  (JA-1272 ¶¶ 26-28.)  HSBC invested in the Funds, which in turn invested substantially all its assets with Bernard L. Madoff Investment Securities LLC ("BLMIS").  (JA-1264 ¶ 2; JA 1265 ¶ 5; JA-1801

---

[2] Plaintiffs-Appellees are Kenneth M. Krys and Greig Mitchell (the "Liquidators") in their capacities as the duly appointed liquidators and foreign representatives of Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma") (together, the "Funds").

[3] (See Defs.' Mot. for Leave to Appeal the Bankr. Ct.'s Nov. 4, 2021 Order, dated Nov. 18, 2021 [dkt. no. 3 in 21-cv-10316]; Defs.' Mot. for Leave to Appeal the Bankr. Ct.'s Nov. 4, 2021 Order, dated Nov. 18, 2021 [dkt. no. 3 in 21-cv-10334].)  Unless otherwise specified, all citations to docket entries herein refer to 21-cv-10316.  Moreover, unless otherwise specified, all citations to Defendants-Appellants' motion for leave to appeal (dkt. no. 3) herein refer to Defendants-Appellants' revised motion for leave to appeal.  (See Defs.' Mot. for Leave to Appeal the Bankr. Ct.'s Nov. 4, 2021 Order ("Mot. App."), dated Nov. 18, 2021 [dkt. no. 31].)  The revised motion is substantively identical to the original motion dated November 18, 2021; it merely replaced citations to the Colavecchio Declaration (dkt. no. 4) with citations to the Joint Appendices.  (See dkt. no. 30.)

[4] (See Pls.-Appellee' Br. in Opp. to the HSBC Defs.' Interlocutory Appeal ("Opp."), dated Jan. 14, 2022 [dkt. no. 28].)

¶ 2.)  Once BLMIS' fraud was exposed, the Funds entered into liquidation proceedings in 2009 in the BVI.  (JA-1268 ¶ 15; JA-1316 ¶ 174.)

Between 2010 and 2012, Plaintiffs filed numerous Chapter 15 actions (the "Redeemer Actions"), either originally in or removed and transferred to the Bankruptcy Court, seeking to recover redemption payments received by the Funds' investors who redeemed their shares before BLMIS' Ponzi scheme was exposed (see Opp. at 8).  See In re Fairfield Sentry Ltd., 596 B.R. 275, 284, 289 (Bankr. S.D.N.Y. 2018).  These cases against HSBC are two of those Redeemer Actions.

The Redeemer Actions proceeded in parallel to essentially identical proceedings in the BVI.  See id. at 289.  On October 18, 2011, Judge Burton R. Lifland, the former presiding judge in the Redeemer Actions, stayed all litigation in the Redeemer Actions pending related BVI appeals (the "2011 Stay").  (JA-260-61.)  The stay was to "remain in effect pending further order of th[e] Court."  (Id.)

On June 27, 2012, the Bankruptcy Court lifted the 2011 Stay solely to order Defendants to disclose the identities of beneficial shareholders on whose behalf Defendants subscribed for or held shares of the Funds.  (JA-315-22.)  Defendants opposed, and, on appeal, the Court affirmed in part and reversed in part.

3

First, the Court held that the Bankruptcy Court erred in construing the parties' subscription agreements to find "a broad general waiver of the international banking privacy laws." (JA-2035:17-21.)  The Court reversed and held that on remand the Bankruptcy Court should determine whether disclosure of beneficial shareholder identities would conflict with foreign law and, if so, undertake a comity analysis.  (See JA-2039:6-JA-2040:9.)

Second, the Court affirmed the Bankruptcy Court's "issuing the foreign disclosure order pursuant to Federal Rule of Civil Procedure 26 prior to resolving challenges to subject matter jurisdiction, personal jurisdiction and abstention." (JA-2043:15-19.)  The Court stated that "[t]o the extent a bright line exists on this question [of sequencing jurisdictional issues], it appears to be that . . . '[j]urisdictional questions ordinarily must precede merits determinations in dispositional order,'" which the Bankruptcy Court did not violate because the order was "not itself a decision on the merits."  (JA-2043:8-14 (quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007)).)

On remand, the Bankruptcy Court conducted a comity analysis, finding that components of this analysis "militate[] heavily in favor of [Defendants]."  (JA-337.)  Thus, the

4

Bankruptcy Court denied Plaintiffs' disclosure request. (JA-338.)

In January 2014, the Redeemer Actions were transferred to Judge Stuart M. Bernstein.  On July 27, 2016, the Bankruptcy Court lifted the 2011 Stay solely to allow Plaintiffs to file amended complaints.  (JA-408:4-8.)  The 2011 Stay remained in place to stay discovery "[p]ending the Court's resolution of the Motion for Leave and the Motion to Dismiss, absent further order of the Court."  (JA-420; see also JA-1203:6-8 (noting that permitting Plaintiffs to file amended complaints did not terminate the 2011 Stay).)

On February 28, 2021, the Redeemer Actions were transferred to Chief Judge Cecelia M. Morris.  (JA-1205:15-16.)  On March 17, 2021, Plaintiffs requested that the Bankruptcy Court lift the stay on discovery because "[a]fter 11 years of litigation in the U.S. Bankruptcy Court, there's been zero formal discovery in this case."  (JA-616:5-17.)

The Bankruptcy Court addressed Plaintiffs' request during the July 28, 2021 conference.  The Bankruptcy Court first reiterated that the Redeemer Actions were "stayed in 2011 and at this moment there is no order having been entered lifting that stay."  (JA-1208:13-15; see also JA-1210:15-16.)  Plaintiffs reiterated their desire to lift the 2011 Stay and proceed with discovery.  (JA-1210:17-19.)  In opposing, Defendants stated,

"we don't have a problem with lifting the [2011 Stay] as long as
the stay of discovery that Judge Bernstein put in place
following Judge Lifland's decision remains in place pending
[Defendants' yet-to-be-filed] motions to dismiss" for lack of
personal jurisdiction.  (JA-1213:14-20.)  Defendants contended
that if the Bankruptcy Court denied their objection to producing
documents, information, and testimony on the basis that the
Bankruptcy Court had not yet ruled on their pending (as of
October 29, 2021) motions to dismiss for lack of personal
jurisdiction (the "Sequencing Objection"), then "a number of
foreign defendants [would not] be able to comply with those
discovery requests in the absence of personal jurisdiction of
this court because doing so will constitute a criminal offense
under foreign law."  (JA-1212:11-18.)  The Bankruptcy Court
ruled against Defendants and lifted the 2011 Stay in its
entirety, reasoning that prior to this conference "for all
intents and purposes, [the 2011 Stay] has been lifted except the
formality because the BVI litigation is over."  (JA-1215:18-24.)
When Plaintiffs asked if they were now "free to move forward
with discovery," the Bankruptcy Court instructed Plaintiffs to
"[g]o to the Rules of Civil Procedure . . . you're free to do
whatever the federal rules say you're free to do."  (JA-1216:20-
JA-1217:4.)  On August 5, 2021, the Bankruptcy Court entered an
order (the "August 5 Order") memorializing (1) the lifting of

the 2011 Stay, and (2) that the Redeemer Actions shall proceed according to the Federal Rules of Civil Procedure.  (JA-1258-59.)

Between August 17 and September 15, 2021, Plaintiffs served on Defendants requests to produce documents and interrogatories relating to personal jurisdiction, among other topics.  (See JA-881.)  Defendants filed their responses and objections on September 29, 2021.  (See JA-1350; JA-1380; JA-1407; JA-1437.) As pertinent to this appeal, Defendants objected to each document request and interrogatory "as premature on the basis that the court lacks personal jurisdiction over it and has not conducted the requisite comity analysis required by the District Court."  (JA-1361; JA-1389; JA-1418; JA-1446.)

On October 13, 2021, Plaintiffs filed their motion to compel, specifically requesting the Bankruptcy Court overrule Defendants' Sequencing Objection and ordering Defendants to proceed with discovery under the Federal Rules of Civil Procedure.  (See JA-1334.)

The Bankruptcy Court heard the parties' arguments on October 28, 2021 (the "October 28 Hearing") and ruled from the bench granting Plaintiffs' motion to compel and overruling Defendants' Sequencing Objection.  (See JA-1514-84.)  Following the October 28 Hearing, the Bankruptcy Court memorialized its rulings in the November 4 Order, further instructing the parties

to "participate in discovery in accordance with the Federal Rules of Civil Procedure." (JA-1663 ¶ 3.)

Defendants filed their motion for leave to appeal the November 4 Order on November 18, 2021. (See Mot. App.) The Court accepted HSBC's petitions for interlocutory appeal on December 10, 2021. (See dkt. no. 22.) Plaintiffs filed their opposition motions on December 9, 2021[5] and on January 14, 2022 (see Opp.). Defendants replied in turn.[6]

On November 18, 2021, and December 6, 2021, thirty-five defendants (the "Joining Defendants") filed motions seeking to join Defendants' appeal (the "Joinder Motions"). (See dkt. no. 8; dkt. no. 4277 in 10-ap-03496.) Plaintiffs addressed the Joinder Motions in their opposition to Defendants' appeal from the November 4 Order. (See Opp. at 62-64.) The Joining Defendants replied in turn. (See dkt. no. 34.)

## II.  **Legal Standard**

The Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from

---

[5]  (See Mem. of Law in Opp. to the HSBC Defs.' Mot. for Leave to File an Interlocutory Appeal ("Opp. App."), dated Dec. 9, 2021 [dkt. no. 19].)
[6]  (See Reply Br. for Defs.-Appellants ("Reply"), dated Jan. 28, 2022 [dkt. no. 32].)

final judgments, orders, and decrees; . . . [and] with leave of
the court, from other interlocutory orders and decrees; . . . of
bankruptcy judges."  28 U.S.C. §§ 158(a)(1),(3).

## III. <u>Discussion</u>

### a. Standard of Review

The Court reviews the Bankruptcy Court's factual findings
for clear error and its conclusions of law <u>de novo</u>.  <u>See
Overbaugh v. Household Bank, N.A. (In re Overbaugh)</u>, 559 F.3d
125, 129 (2d Cir. 2009).  "A bankruptcy court's orders relating
to pure discovery issues are reviewed for abuse of discretion."
<u>In re Cinque Terre Fin. Grp. Ltd.</u>, 2016 WL 6952349, at *3
(S.D.N.Y. Nov. 28, 2016).  "A bankruptcy court abuses its
discretion if its decision rests on an error of law or a clearly
erroneous factual finding or cannot be located within the range
of permissible decisions."  <u>In re Murray</u>, 900 F.3d 53, 59
(2d Cir. 2018).  A finding of fact is "clearly erroneous" when
there is a "definite and firm conviction that a mistake has been
made."  <u>In re Ames Dep't Stores, Inc.</u>, 582 F.3d 422, 426
(2d Cir. 2009) (citing <u>United States v. U.S. Gypsum Co.</u>,
333 U.S. 364, 395 (1948)).

### b. Subject Matter Jurisdiction Over Defendants' Appeal

At the outset, Plaintiffs argue that the Court lacks
subject matter jurisdiction because Defendants' appeal is
untimely.  (<u>See</u> Opp. at 21-26; Opp. App. at 8-9.)  Specifically,

Plaintiffs contend that Defendants filed an untimely appeal
pursuant to 28 U.S.C. § 158(c)(2) because the November 4 Order
merely reiterates the Bankruptcy Court's August 5 Order and
order dated September 28, 2021[7] (the "September 28 Order"),
neither of which Defendants timely appealed.  (See Opp. at 21-
26; Opp. App. at 8.)  Defendants oppose, stating that prior to
the October 28 Hearing, the Bankruptcy Court had not resolved
the issues in this appeal.  (See Reply at 4-8.)

Defendants filed this appeal on November 18, 2021, fourteen
days after the November 4 Order, which memorialized the
Bankruptcy Court's rulings during the October 28 Hearing.  (See
JA-1665; JA-1906.)  Federal Rule of Bankruptcy Procedure
8004(a)(1) states, "[t]o appeal from an interlocutory order or
decree of a bankruptcy court under 28 U.S.C. § 158(a)(3), a
party must file . . . a notice of appeal . . . within the time
allowed by Rule 8002."  Fed. R. Bankr. P. 8004(a)(1); 8002(a)(1)
(noting that "a notice of appeal must be filed . . . within
14 days after entry of the judgment, order, or decree being
appealed").

---

[7]  On September 28, 2021, the Bankruptcy Court ordered Defendants
to file "their motions to dismiss, solely on personal
jurisdiction grounds" by October 29, 2021.  (See JA-881.)  The
Bankruptcy Court also ordered the parties "to proceed with
discovery according to the Federal Rules of Civil Procedure."
(JA-883.)

Plaintiffs' timeliness argument rests on the Court's agreeing that the only issue on appeal is whether the Bankruptcy Court abused "its discretion by finding that HSBC may not withhold jurisdictional discovery solely on the basis that the court had not yet decided the ultimate question of whether it has personal jurisdiction over HSBC." (Opp. at 1.) Plaintiffs contend that because the Bankruptcy Court overruled Defendants' Sequencing Objection in the August 5 Order and September 28 Order, Defendants cannot relitigate the Sequencing Objection merely because the Bankruptcy Court reiterated the denial of the Sequencing Objection in the November 4 Order. (See Opp. at 22.)

Plaintiffs' argument assumes too much. The issues on appeal include, among other things, whether the Bankruptcy Court erred by finding that the "Amended Complaints (10-ap-03630, Dkt. 167; 10-ap-3633, Dkt. 143 [together, the "Fourth Amended Complaints"]) provide a reasonable basis for assuming personal jurisdiction over" HSBC before the Bankruptcy Court decided Defendants' Rule 12(b)(2) motions. (Dkt. no. 25 at 2; JA-1663-64.) The November 4 Order was the first time that the Bankruptcy Court rendered this holding.

The Court agrees with Defendants that the August 5 Order did not address jurisdictional discovery or the Sequencing Objection. (See JA-1259 ¶¶ 1-2.) In fact, the Bankruptcy Court

11

explicitly stated, "I'm not going to pre-rule" on Plaintiffs'
request to proceed with discovery.  (JA-1216:20-25.)

The Bankruptcy Court reiterated this position in September
2021.  In response to Defendants' letter requesting a briefing
schedule for motions to dismiss for lack of personal
jurisdiction, (JA-798-802), the Bankruptcy Court reiterated
during the conference on September 15, 2021, that "if
[Defendants] don't like it when [Plaintiffs] file[] [their
discovery] request, then you come to me.  I'm not going to
prejudge anything."  (JA-816:23-25; see also JA-822:17-21
("[W]e're going to set the [briefing] schedule and we'll do
. . . discovery.  Let them serv[e] it.  If you don't like what
discovery is for your particular client, you object.").)

The September 28 Order further confirms this approach
because the Bankruptcy Court struck Plaintiffs' proposed recital
that "Plaintiffs are entitled to proceed with discovery in aid
of personal jurisdiction."  (JA-881.)  Rather, the Bankruptcy
Court only ordered "[t]he parties [] to proceed with discovery
according to the Federal Rules of Civil Procedure."  (JA-883.)

Contrary to Plaintiffs' position, the Court finds that the
November 4 Order differs from the August 5 Order and
September 28 Order in matters affecting Defendants' substantive
rights.  Unlike the language in the August 5 Order and
September 28 Order that the Bankruptcy Court would not "pre-

rule" or "prejudge" Plaintiffs' discovery requests, in the November 4 Order, the Bankruptcy Court held that Plaintiffs' personal jurisdiction allegations in the Fourth Amended Complaints "provide[d] a reasonable basis for assuming personal jurisdiction over" HSBC to permit jurisdictional discovery. (JA-1664 ¶ 4.)  Thus, the Court finds that the record supports Defendants' position; the Court has subject matter jurisdiction as this appeal is timely.  Accordingly, Plaintiffs' timeliness argument is denied.

### c. Leave to Appeal

The Court has discretion to grant an interlocutory appeal of an order of the Bankruptcy Court.  28 U.S.C. § 158(a)(3); see also Sterling v. Harrison (In re Sterling), No. 17-CV-248, 2018 WL 1157970, at *3 (S.D.N.Y. Mar. 2, 2018) (citing Gibson v. Kassover (In re Kassover), 343 F.3d 91, 94 (2d Cir. 2003)), appeal dismissed, No. 18-995, 2018 WL 4859355 (2d Cir. July 23, 2018); Fed. R. Bankr. P. 8004 (providing procedure for appeal requiring leave).  In exercising that discretion, the Court looks for guidance to 28 U.S.C. § 1292(b), which states that courts have granted leave to appeal an interlocutory order where the order (1) "involves a controlling question of law," (2) "as to which there is a substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

13

28 U.S.C. § 1292(b); see also Credit One Fin. v. Anderson (In re Anderson), 550 B.R. 228, 234 (S.D.N.Y. 2016).  Defendants argue that the Court should grant its motion for leave to appeal the November 4 Order because (1) "[t]wice before the Court has exercised its discretion to review orders in these cases"; (2) Defendants satisfy the factors in 28 U.S.C. § 1292(b); and (3) "the risk to Defendants without interlocutory appellate review is exceptional and potentially irreparable."  (Mot. App. at 21-23.)

The Court is mindful that interlocutory appeal from discovery orders is generally disfavored.  This presumption can be overcome either by satisfaction of the 28 U.S.C. § 1292(b) factors, "a showing of persistent disregard of the Rules of Civil Procedure," or a showing of "manifest abuse of discretion."  Xerox Corp. v. SCM Corp., 534 F.2d 1031, 1031-32 (2d Cir. 1976); Cohen v. City of New York, 2007 WL 2789272, at *7 (S.D.N.Y. Sept. 25, 2007) (same).

The Court has twice before granted leave to appeal an interlocutory order of the Bankruptcy Court in the Redeemer Actions.  (See JA-1990:22-JA-1991:10.)  Indeed, the facts surrounding the Court's July 6, 2012 order (the "July 6 Order") parallel the instant appeal.

As stated above, in June 2012, Judge Lifland lifted the 2011 Stay solely to order Defendants to disclose the identities

14

of beneficial shareholders on whose behalf Defendants subscribed for or held shares of the Funds.  (See JA-315-17; JA-336.)  The Bankruptcy Court did not conduct a comity analysis because the Bankruptcy Court found that Defendants waived their respective countries' secrecy and data protection laws by signing the Funds' subscription agreements.  (See JA-319-21.)  In addition, the Bankruptcy Court held that it could grant this discovery before deciding Defendants' jurisdictional challenges because "[t]he Court is not ruling on the merits at this time and the Foreign Representative does not seek merit-based discovery." (JA-318.)  On an emergency appeal, the Court reversed and remanded for consideration of issues of international comity. (See JA-2035:17-21; JA-2039:6-JA-2040:9.)  Specifically, the Court held that the Bankruptcy Court should analyze whether there is an actual conflict with foreign law and, if so, whether the comity factors favor production.  (Id.)

On remand, Judge Lifland held that "[i]n light of Judge Preska's recent ruling of July 6, 2012, the Court has conducted a comity analysis, pursuant to which I decline" Plaintiffs' request for discovery.  (JA-336-37.)  In discussing the comity analysis, Judge Lifland held that "the competing interests of the nations whose laws are in conflict, militates heavily in favor of the [Defendants]."  (JA-337.)  The Bankruptcy Court also noted that granting Plaintiffs' request would "implicate[]

15

the significant bank customer confidentiality laws of no fewer than 30 countries." (Id.)

Unlike in 2012, here, the record does not reflect that the Bankruptcy Court conducted a comity analysis before issuing the November 4 Order. Rather, the Bankruptcy Court stated that this Court's concern about comity was "no longer applicable as the court concluded that it had subject matter jurisdiction over these redeemer actions."[8] (JA-1580:19-24.)

While the Court does not accept Defendants' representation that the November 4 Order is "at least in tension with—if not irreconcilable with—[the July 6 Order]," (Mot. App. at 22),

---

[8] The Bankruptcy Court concluded that this Court granted Defendants' leave to appeal in 2012 because "'genuine doubt' exist[ed] as to the ability of the bankruptcy court to order foreign disclosures without first addressing the threshold questions of subject matter jurisdiction and mandatory abstention." (JA-1580:17-24; JA-1989:15-18.) The Court notes that the ability of the Bankruptcy Court to order foreign discovery without first deciding threshold questions of subject jurisdiction and mandatory abstention was one but not the sole question of law on appeal. (See JA-1988:7-10 ("[T]he dispute over the need for the bankruptcy court to undertake an international comity analysis before ordering foreign discovery is a 'pure' question of law . . . .").) On remand, the Bankruptcy Court's comity analysis supports this interpretation. The Bankruptcy Court recognized that one of the most important comity factors is "the competing interests of the nations whose laws are in conflict [which] militates heavily in favor of the respondents" because of "the strong and undeniable interest of many nations in enforcing their banking secrecy laws." (JA-337.)

given the overlap of Plaintiffs' document requests,[9] the Court is persuaded that review of the November 4 Order is appropriate to ensure consistency with the Court's prior orders in this matter.[10]

Turning to the § 1292(b) factors, Defendants contend that the November 4 Order satisfies these factors because the November 4 Order "involves an erroneous finding on an important 'controlling question of law.'"  (Mot. App. at 22.) Specifically, Defendants argue that the "Bankruptcy Court's refusal to apply Circuit precedent, coupled with its broad language and threat of sanctions, raises fundamental issues of controlling law."  (Id.)

With respect to the first prong of § 1292(b), "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."  In re Adelphia Commc'ns Corp., 333

---

[9] (Compare JA-336 (discussing "the Foreign Representative's request . . . that defendants named in the Redeemer Actions disclose the identities of any person or entity on whose account or for whose benefit such defendants subscribed for or held shares in Fairfield Sentry Limited, Sigma Limited, and Lambda Limited") with JA-1389 (requesting "[f]or the period January 1, 1990 to December 31, 2008, [Defendants] identify all Persons involved in . . . Communications concerning using a U.S. correspondent bank for Your use in redeeming shares from Sentry, including any Beneficial Shareholders").)
[10] Plaintiffs maintain that each request for production at issue goes to jurisdictional issues.  (See JA-1530:19-JA-1531:5; JA-2563-64.)

B.R. 649, 658 (S.D.N.Y. 2005); see also Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007).  "Questions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)."  In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (citation omitted).  In addition, in determining whether a "controlling question" of law exists, courts in this Circuit consider "whether: reversal of the [bankruptcy] court's opinion could result in dismissal of the action; reversal of the [bankruptcy] court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases."  Glatt v. Fox Searchlight Pictures Inc., 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (quoting Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)); see also In re Duplan Corp., 591 F.2d 139, 148 n.11 (2d Cir. 1978) (noting that a "controlling question" of law "include[s] a procedural determination that may importantly affect the conduct of an action").

The second prong "is met when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'"  Capitol Records, LLC v. Vimeo, LLC, 972 F. Supp. 2d 537, 551

(S.D.N.Y. 2013) (quoting In re Enron Corp., 2007 WL 2780394, at
*1 (S.D.N.Y. Sept. 24, 2007)).

Finally, the third prong—which in practice is "closely
connected" to the first prong, In re 650 Fifth Ave., 2012 WL
363118, at *2 (S.D.N.Y. Feb. 2, 2012—is met when an immediate
appeal "promises to advance the time for trial or to shorten the
time required for trial," Transp. Workers Union of Am. v. N.Y.C.
Transit Auth., 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005).

The Court is persuaded that whether the Bankruptcy Court
may compel jurisdictional discovery before the Bankruptcy Court
determines that Plaintiffs have established a prima facie
jurisdictional case is a "'pure' question of law that the
reviewing court could decide quickly and cleanly without having
to study the record."  See In re Adelphia Commc'ns Corp., 333
B.R. at 658.  This question is also "controlling" because
reversal of the November 4 Order would affect Plaintiffs'
ability to obtain jurisdictional discovery before the Bankruptcy
Court decided whether it has personal jurisdiction over HSBC.
For similar reasons, the Court finds that Defendants satisfy the
third prong as resolution of this issue will allow the parties
to proceed through litigation without further delay.  Finally,
Plaintiffs satisfy the second prong because the parties present
conflicting authority on the pleading standard required for a
trial court to permit jurisdictional discovery.

Although application of § 1292(b) factors is guided by the
Court of Appeals' caution that "only 'exceptional circumstances
[will] justify a departure from the basic policy of postponing
appellate review until after the entry of a final judgment,'" In
re A2P SMS Antitrust Litig., 2015 WL 876456, at *2 (S.D.N.Y.
Mar. 2, 2015) (quoting Klinghoffer v. S.N.C. Achille Lauro Ed
Altri-Gestione Motonave Achille Lauro In Amministrazione
Straordinaria, 921 F.2d 21, 25 (2d Cir. 1990)), the Court finds
that in light of its prior order remanding this case for
considerations on international comity, this case presents the
sort of exceptional circumstances courts have found when
granting such a motion.  Accordingly, the Court grants
Defendants' motion for leave to appeal the November 4 Order.

### d. Merits of the Appeal

#### i. Overruling Defendants' Sequencing Objection and Granting Jurisdictional Discovery

The Court first addresses whether the Bankruptcy Court
abused its discretion by overruling Defendants' Sequencing
Objection.  The timeline of events is pertinent to the Court's
analysis.  By the October 28 Hearing, Defendants had not filed
their motions to dismiss for lack of personal jurisdiction.
(See JA-881.)  Defendants timely filed their Rule 12(b)(2)
motions the following day on October 29, 2021.  (See dkt.
no. 205 in 10-ap-03630.)  Six days later, the Bankruptcy Court

20

filed the November 4 Order, which memorialized the Bankruptcy Court's rulings during the October 28 Hearing.  (JA-1663-64.)

At the conclusion of the October 28 Hearing, the Bankruptcy Court ordered "the defendant[s] to participate in discovery on [] personal jurisdiction" and allowed Plaintiffs to "request any discovery that they believe [is] permitted under the federal rules." (JA-1583:25-JA-1584:3.)  The parties do not cite, and the Court is not aware of any case establishing that a trial court may compel discovery <u>prior to</u> receiving a jurisdiction-testing motion.  Despite this sequencing, the timing and language of the November 4 Order—the order on appeal—remedies any potential deficiency.

As stated above, in the interim between the October 28 Hearing and the November 4 Order, Defendants filed their motions to dismiss for lack of personal jurisdiction.  (<u>See</u> dkt. no. 205 in 10-ap-03630.)  The language in the November 4 Order reflected these filings, overruling HSBC's objection "to producing documents, information, and testimony on the grounds that this Court has not yet ruled on their <u>pending</u> motions under Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of jurisdiction." (JA-1663 (emphasis added).)

It is well established that "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a [trial] court has considerable procedural leeway.  It may . . . permit

21

discovery in aid of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); see also APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) ("A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction."); Vega v. Hastens Beds, Inc., 339 F.R.D. 210, 218 (S.D.N.Y. 2021) ("In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery."). Thus, the Court finds that the Bankruptcy Court had discretion to compel jurisdictional discovery after Defendants filed their motions to dismiss.

However, the Court's analysis does not end there; the parties disagree on the pleading standard required for the Bankruptcy Court to permit jurisdictional discovery. Defendants contend that the Bankruptcy Court abused its discretion by not finding that Plaintiffs established a prima facie case of jurisdiction before authorizing jurisdictional discovery. (See Mot. App. at 13-15 (citing Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998)).) Plaintiffs oppose stating that the Bankruptcy Court was permitted to order jurisdictional discovery upon finding that Plaintiffs pled a "reasonable basis" to assume jurisdiction regardless of whether a prima facie case was first found. (See Opp. at 27.)

"A district court has wide latitude to determine the scope of discovery." In re Agent Orange Product Liability Litig., 517 F.3d 76, 103 (2d Cir. 2008).  When "the plaintiff [has] not made out a prima facie case for jurisdiction," then a court is "typically within its discretion to deny jurisdictional discovery." Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 401 (2d Cir. 2009) (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007)).  However, "[e]ven if a plaintiff has not made out a prima facie showing for personal jurisdiction, 'the Court has discretion to order further discovery on the jurisdictional issue, provided that the plaintiff[] make[s] a threshold showing of jurisdiction and establishes that [its] position is not frivolous.'" Tannerite Sports, LLC v. NBCUniversal Media LLC, 135 F. Supp. 3d 219, 231 (S.D.N.Y. 2015) (citation omitted); see also Ehrenfeld v. Mahfouz, 489 F.3d 542, 550 n.6 (2d Cir. 2007) (stating that it would be legal error for a district court to interpret "Jazini as forbidding jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction"); Leon v. Shmukler, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) ("It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to

establish jurisdiction if given the opportunity to develop a full factual record.").

The Court rejects Defendants' argument that the Bankruptcy Court lacked discretion to permit jurisdictional discovery because Defendants contest personal jurisdiction on purely legal grounds, eliminating any "genuine issue of jurisdictional fact" that discovery might resolve.  (See Reply at 11-13.)  During the October 28 Hearing, the Bankruptcy Court discussed Plaintiffs' jurisdictional allegations stating:

> [T]he plaintiff alleges that the defendants have purposefully availed themselves of the laws of the United States and the State of New York by, among other things, investing money with the funds, knowing and intending that the funds would invest substantially all their money in the New York-based BLMIS and upon information and belief, maintaining bank accounts in the United States and, in fact, receiving redemption payments in those United States-based accounts.
>
> The defendants allegedly selected to invest in U.S. dollars and have their redemption payments deposited in U.S. bank accounts.  The . . . plaintiffs also argue that the defendants agreed to [be] subject of the jurisdiction of the United States courts by virtue of the subscription agreements.

(JA-1578:23-JA-1579:12.)  These allegations are appropriate for discovery because additional facts to establish personal jurisdiction—such as what HSBC considered when investing in the Funds—lie within Defendants' knowledge.  See Winston & Strawn v. Dong Won Secs. Co., Ltd., 2002 WL 31444625, at *5 (S.D.N.Y. Nov.

1, 2002) ("Pre-motion discovery should be permitted where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge.").  In fact, the Court previously instructed the parties on July 6, 2012, that "the Court of Appeals has held that jurisdictional discovery itself may be appropriate where the defendant challenges jurisdiction in order to help the Court resolve that issue." (JA-2042:23-JA-2043:1.)  Such was the situation that the Bankruptcy Court faced; after hearing the parties' arguments on jurisdictional discovery, the Bankruptcy Court stated, "If I'm going to rule on jurisdiction, I need discovery." (JA-1577:14-15.)  Thus, although Defendants set forth arguments to the contrary, the Bankruptcy Court was left with factual questions that had to be resolved to determine whether personal jurisdiction exists over Defendants.  Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion by not finding that Plaintiffs established a prima facie case of jurisdiction before authorizing discovery; the Bankruptcy Court properly exercised its discretion to overrule the Sequencing Objection and grant jurisdictional discovery upon finding that the allegations of jurisdictional facts in Plaintiffs' Fourth Amended Complaints "provide[s] a reasonable basis for assuming jurisdiction." (JA-1578:20-22.)

The Court now analyzes whether the Bankruptcy Court correctly applied the standard to authorize jurisdictional discovery.  As stated above, during the October 28 Hearing, the Bankruptcy Court set forth Plaintiffs' jurisdictional allegations in the Fourth Amended Complaints to show that, among other things, Plaintiffs allege that Defendants purposefully directed their activities at the United States by maintaining U.S.-based correspondent bank accounts.  (JA-1578:22-JA-1579:6.)  Considering the above, the Bankruptcy Court found that Plaintiffs did not present bare assertions that jurisdiction is proper.  (JA-1578:20-JA-1579:12.)  Thus, the Court finds that the Bankruptcy Court did not err in finding that the allegations in Plaintiffs' Fourth Amended Complaints "provide a reasonable basis for assuming jurisdiction" to permit jurisdictional discovery.  (JA-1664 ¶ 4.)  Accordingly, Defendants' argument to vacate the November 4 Order on this ground is denied.

    ii. Pre-Judging Defendants' Jurisdictional Motions

Defendants next argue that the Bankruptcy Court erred by pre-judging their motions to dismiss because the November 4 Order finds that Plaintiffs' allegations of jurisdictional facts in the Fourth Amended Complaints "provide a reasonable basis for assuming personal jurisdiction" over HSBC.  (JA-1664 ¶ 4; Mot. App. at 15; Reply at 21-23.)  However, the record disproves Defendants' argument.  First, Defendants misinterpret the

26

November 4 Order.  In holding that Plaintiffs' allegations of
jurisdictional facts in the Fourth Amended Complaints "provide a
reasonable basis for assuming personal jurisdiction" over HSBC,
the Bankruptcy Court simply memorialized its rulings on
October 28, 2021.  In fact, Plaintiffs proposed this exact
language in their proposed order implementing the Bankruptcy
Court's October 28, 2021 rulings.  (See JA-1612 ¶ 4.)

Second, the Bankruptcy Court could not have pre-judged
Defendants' motions to dismiss because the Bankruptcy Court's
ruling that Plaintiffs' Fourth Amended Complaints "provide[] a
reasonable basis for assuming jurisdiction" over HSBC occurred
before Defendants filed their motions to dismiss.  (JA-1578:20-
22.)  In fact, as discussed above, the Bankruptcy Court
explicitly stated, "If I'm going to rule on jurisdiction, I need
discovery."  (JA-1577:14-15.)  Thus, it is clear that the
language in the November 4 Order reflects the Bankruptcy Court's
October 28, 2021 ruling overruling Defendants' Sequencing
Objection and granting jurisdictional discovery based on the
sufficiency of Plaintiffs' allegations of personal jurisdiction
in the Fourth Amended Complaints, not pre-judging Defendants'
motions to dismiss.  Accordingly, the Court does not find that
the Bankruptcy Court erred by finding that Plaintiffs' Fourth
Amended Complaints "provide a reasonable basis for assuming

personal jurisdiction" over HSBC either before or after
Defendants' motions to dismiss were filed.

### iii.  Clarifying the Scope of the November 4 Order

Defendants argue that the Bankruptcy Court erred by not
limiting the November 4 Order to "'jurisdictional discovery,' as
Defendants requested, [see JA-1656 ¶ 2] and that other
objections were preserved."  (Mot. App. at 18.)  However, after
reviewing the record, the Court finds that Defendants' argument
lacks merit.

The November 4 Order only overrules the Sequencing
Objection[11] and orders the parties to "participate in discovery
in accordance with the Federal Rules of Civil Procedure."
(JA-1663 ¶ 3.)  The scope of discovery mandated in the
November 4 Order is consistent with the August 5 Order, which
lifted the 2011 Stay on discovery and ordered the Redeemer
Actions to "proceed in accordance with the Federal Rules of
Civil Procedure."  (JA-1259 ¶ 2.)  Thus, the November 4 Order
did not expand the scope of discovery permitted in the August 5
Order; it merely overruled one of Defendants' objections to
producing documents, information, and testimony.  In fact,

---

[11] For the reasons stated above, the Bankruptcy Court's holding
that Plaintiffs' Fourth Amended Complaints "provide a reasonable
basis for assuming personal jurisdiction" over HSBC supports the
Bankruptcy Court's discretion to permit jurisdictional discovery
in aid of ruling on Defendants' motions to dismiss.

during the October 28 Hearing, the Court stated, "[t]he plaintiff[s] may request any discovery that they believe [is] permitted under the federal rules.  Defendants either must comply or formally object in the manner set out by the federal— the civil rules of procedure."  (JA-1584:1-5.)

Plaintiffs have also represented to Defendants that they "will focus for the time being on the RFPs and interrogatories relevant to opposing" Defendants' motions to dismiss for lack of personal jurisdiction.  (JA-2563; Opp. at 59-60 ("[T]he Liquidators have been clear that at this juncture they only seek discovery from HSBC relevant to personal jurisdiction."); Opp. App. at 6.)  While Defendants argue that it "is not inconceivable that the Bankruptcy Court would, in the future, assume that [the November 4 Order] actually did authorize merits discovery . . .," the Court cannot rule upon this hypothetical future order.  (Mot. App. at 18.)  Accordingly, Defendants' argument to vacate the November 4 Order on this ground is denied.

      iv. <u>Granting Jurisdictional Discovery Without</u>
                     <u>Considering Comity</u>

The November 4 Order does not address Defendants' comity objection; the parties dispute whether correctly so.  Defendants contend that the Bankruptcy Court erred because conducting a comity analysis was a necessary predicate to granting

jurisdictional discovery in accordance with the Court's July 6
Order.  (See Mot. App. at 19-21.)  Plaintiffs oppose stating
that Defendants' comity arguments are neither ripe—because
Plaintiffs and Defendants had not conferred on Defendants'
objections other than sequencing, "e.g., relevancy, foreign
privacy laws, and bank secrecy laws," (see JA-1335 n.4; Opp.
at 53)—nor properly on appeal because Defendants did not raise a
specific conflict or comity analysis before the Bankruptcy Court
with respect to the November 4 Order (see Opp. at 52-53).  In
fact, Defendants agree with Plaintiffs that their "comity-based
objections to being required to produce documents in violation
of Swiss and/or Luxembourg law were not presented to the
Bankruptcy Court and were not ripe for decision."  (Reply at 25-
26.)  However, Defendants challenge the November 4 Order because
it "can be read to take the contrary view," (see Reply at 26),
given that the Bankruptcy Court rejected language from
Defendants' counter-order—implementing the Bankruptcy Court's
October 28, 2021 rulings—that the Bankruptcy Court was not
"ruling on any other objections that may be raised."  (JA-1656
¶ 2.)  Because Defendants posit a hypothetical, future
interpretation, the Court may not rule upon this argument.

While parallels exist between the events leading to the
Court's July 6 Order and the events at issue, the distinctions
merit discussion.  In opposing Plaintiffs' 2012 motion seeking

beneficial shareholder information, Defendants submitted

affidavits from foreign law experts asserting that compliance

with Defendants' motion would violate specific foreign laws.

(See JA-298-305.)  By contrast, in opposing Plaintiffs' motion

to compel, Defendants submitted no affidavits from foreign law

experts.[12]  (See JA-1583:13-14 ("Defendants have not provided any

analysis of any foreign law in their brief.").)  Rather,

Defendants stated, "[a]t the appropriate time, the HSBC

Defendants will submit foreign legal analyses detailing the full

scope of these objections" to Plaintiffs' discovery requests.

(JA-1506 n.20.)  Similarly, in opposing Plaintiffs' 2012 motion,

Defendants discussed the factors relevant to a comity analysis,

as set forth in Société Nationale Industrielle Aérospatiale v.

U.S. Dist. Court for S. Dist. Of Iowa, 482 U.S. 522, 543-44 &

n.28 (1987).  (See JA-305-13.)  On the contrary, in opposing

Plaintiffs' motion to compel, Defendants did not analyze these

factors.  (See JA-1506-7.)

        The Bankruptcy Court addressed comity and the Court's

July 6 Order during the October 28 Hearing.  The Bankruptcy

Court first stated that Defendants should have raised concerns

---

[12] Defendants noted that "Plaintiffs' Discovery Requests
implicate, at least, various articles of the Swiss Federal Act
on Banks and Savings Banks, the Swiss Penal Code, the Swiss
Federal Data Protection Act, Luxembourg's Law of 5 April 1993
regarding banking confidentiality, and the E.U.'s General Data
Protection Regulation."  (JA-1506 n.20.)

about comity when the Bankruptcy Court heard arguments on
whether the 2011 Stay should be lifted or have appealed the
August 5 Order.  (JA-1580:11-17.)  The Bankruptcy Court also
noted two procedural differences from 2012: (1) the BVI
litigation concluded; and (2) in 2018, the Bankruptcy Court
denied Defendants' motion to dismiss for lack of subject matter
jurisdiction.  See In re Fairfield Sentry Ltd., 2018 WL 3756343
(Bankr. S.D.N.Y. Aug. 6, 2018).  Thus, the Bankruptcy Court's
prior concerns about the BVI litigation and the Court's concerns
about subject matter jurisdiction over the Redeemer Actions were
no longer outstanding considerations for the Bankruptcy Court
when analyzing Plaintiffs' motion to compel.

    After reviewing these distinctions, the Bankruptcy Court
invited Defendants to raise a comity objection in the future,
"formally and in accordance with [the] Federal Rules,"[13] (see
JA-1581:17-18), because Defendants did not argue "with
specificity as to what information is being sought or why it
contravenes a foreign law," as required by Rules 33 and 34(b)
(JA-1583:14-16 (emphasis added)).  The Court finds that the

_____

[13] The Court agrees with Plaintiffs that "the Bankruptcy Court's
comments on waiver clearly related to HSBC's first argument that
a comity analysis should have been conducted before lifting the
[2011] stay, not as to all foreign law objections HSBC might
raise going forward."  (Opp. at 56-57.)  The Bankruptcy Court's
invitation to Defendants to raise future foreign law objections
in accordance with the Federal Rules supports this
interpretation.  (JA-1581:17-18.)

Bankruptcy Court did not disrupt the Court's July 6 Order because Defendants did not meet their burden to object with specificity as to how the information Plaintiffs sought raises a specific conflict with foreign law.  (See JA-1583:21-24 ("Defendants have failed to meet their burden of objecting with specificity under the federal rules and their burden of proving that foreign law prohibits their responses to . . . requested discovery.").)  Thus, the Bankruptcy Court acted within its discretion to decline analyzing Defendants' comity objections until Defendants complied with Rules 33 and 34(b).  Accordingly, Defendants' argument to vacate the November 4 Order on this ground is denied.

### e. The Joining Defendants Lack Standing to Appeal

Finally, the Court addresses the Joining Defendants' Joinder Motions.  (See dkt. no. 8; dkt. no. 4277 in 10-ap-03496.)  The Joining Defendants seek to join in Defendants' motion for leave to appeal to the extent that the November 4 Order applies to the Joining Defendants.  (See dkt. no. 8 at 1.) Plaintiffs oppose, arguing that the Joining Defendants lack standing to appeal.  (See Opp. at 62.)

It is well established in this Circuit that although "[t]he current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution[,] . . . for practical reasons this Court and

others have adopted the general rule, loosely modeled on the former Bankruptcy Act, that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." In re Dunne, 684 F. App'x 85, 86 (2d Cir. 2013) (quoting In re DBSD N. Am., Inc., 634 F.3d 79, 88-89 (2d Cir. 2011)).  Thus, to proceed with their Joinder Motions, the Joining Defendants must establish, in addition to Article III standing, that the November 4 Order caused them a direct and pecuniary injury.

The Joining Defendants concede that the November 4 Order, "by its terms, applies only to HSBC.  The Joining Defendants were not party to plaintiffs' motion to compel against HSBC, they were not heard on that motion, and the Court did not consider the jurisdictional allegations made in the Joining Defendants' cases."  (Dkt. no. 8 at 1-2.)  The November 4 Order states, "[t]he objection of HSSL and PBRS . . . is OVERRULED." (JA-1663 ¶ 2 (emphasis added).)  Moreover, during the October 28 Hearing, the Bankruptcy Court stated, "[t]his motion has been brought by the plaintiffs against only two defendants, . . . HSSL, and . . . PBRS."  (JA-1570:12-16.)  Moreover, the Joining Defendants admit that "it is unclear whether, or to what extent, the [November 4] Order applies to the Joining Defendants at all."  (Dkt. no. 8 at 1.)  The Joining Defendants argue that,

nevertheless, the November 4 Order "may be intended to apply to defendants other than HSBC." (Dkt. no. 8 at 2.)  Because the November 4 Order does not grant any relief "against" the Joining Defendants, the Court finds that the Joining Defendants have not suffered a direct injury.  The Court cannot render an opinion on whether the November 4 Order applies to the Joining Defendants based on the Joining Defendants' hypotheses on the potential impact of the November 4 Order.  Accordingly, the Joining Defendants lack standing to appeal the November 4 Order.

## IV.  **Conclusion**

For the reasons set forth above, the Court grants Defendants-Appellants' motion for leave to appeal the November 4 Order but affirms the November 4 Order in all respects. (See dkt. nos. 3, 31.)  Moreover, the Court finds that the Joining Defendants lack standing to appeal the November 4 Order.  The Clerk of the Court shall close the open motions [dkt. nos. 3, 31] and close case numbers 21-cv-10316 and 21-cv-10334.

**SO ORDERED.**

Dated:     August 31, 2022
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge